UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **1ST SIGNATURE LENDING LLC,** | |
| Plaintiff, | |
| v. | No. 1:20-cv-02130 |
| **BRIGHTON BANK,** | |
| Defendant. | |

## COMPLAINT

1. This case arises from Brighton Bank's scheme to defraud 1st Signature by attempting to collect amounts not owed and by failing to properly allocate amounts actually owed and paid.

2. Brighton contracted to fund and purchase loans originated by 1st Signature. In 2018, the FDIC ordered Brighton to stop funding such loans due to its unsound banking practices. Brighton then terminated the agreement leaving 1st Signature with more than $40 million in unfunded loans.

3. Now in 2020, Brighton is demanding that 1st Signature perform its end of that terminated agreement by buying back three defaulted loans and paying Brighton loan fees and interest.

4. 1st Signature also had two lines of credit with Brighton. 1st Signature paid off both lines of credit. Instead of crediting the payoff on one of those loans, Brighton misappropriated those funds for its own purposes.

5. Brighton has continued to try to collect on those loans by holding up 1st Signature's real estate transactions. Brighton induced a title company to wire 1st

Signature's proceeds from a land sale to pay debts 1st Signature no longer owed.

6. 1st Signature brings this action to stop Brighton from asserting rights under the agreement Brighton terminated, to have the loan payoffs applied correctly, and to recover damages caused by Brighton's criminal conduct.

## PARTIES, VENUE, AND JURISDICTION.

7. Plaintiff 1st Signature Lending, LLC is an Indiana limited liability company that operates as a full-service mortgage lender.

8. 1st Signature has three members: (1) Cornerstone Financial Services, LLC, a New Jersey limited liability company, whose sole member is Kurt Menner; (2) Advance Capital, LLC, an Indiana limited liability company, whose sole member is Victor Vance; and, (3) M&M Capital, LLC, an Indiana limited liability company, whose sole member Mike Johnson.

9. Vance is an Indiana citizen.

10. Menner is a New Jersey citizen.

11. Johnson is an Indiana citizen.

12. 1st Signature is a citizen of Indiana and New Jersey.

13. Defendant Brighton Bank is a Tennessee banking corporation with its principal place of business in Tennessee.

14. Brighton is a Tennessee citizen.

15. The amount in controversy exceeds $75,000 exclusive of costs.

16. The substantial part of the events giving rise to these claims occurred in Indiana.

17. Brighton deprived 1st Signature of its property in Indiana.

18. Brighton directed mail into Indiana to defraud 1st Signature in Indiana.

19. 1st Signature is also asserting federal causes of action under federal statutes.

### THE CORRESPONDENT LOAN PURCHASE AGREEMENT.

20. On May 7, 2015, the parties entered into a Correspondent Loan Purchase Agreement. (Ex. A.)

21. That agreement set out terms under which Brighton would purchase residential construction-to-permanent loans ("CTP Loans") from 1st Signature. A CTP loan is a type of mortgage used to finance home construction. It begins life as a construction loan which the homeowner-to-be draws funds from the lender as construction progresses. Once home construction is complete, the loan becomes a traditional mortgage secured by the new home.

22. Under the agreement, 1st Signature would originate and close loans. Brighton would purchase and fund the loans and then 1st Signature would sell the loans to the secondary market (FHA, VA, USDA, Fannie and Freddie) and pay the total principal of drawn funds, fees, and interest, which were all settled at the completion of the final transaction.

23. Paragraph 18.1 of that agreement allowed for termination at any time by either party as to future commitments. Such termination could not affect loans that Brighton had already committed to purchase unless Brighton reasonably determined that there "has been any deception, fraud, concealment[,] or material misrepresentation by [1st Signature] in performing any of its duties, obligations, responsibilities[,] or actions." (Ex. A. ¶ 18.1.)

24. In July 2018, the FDIC ordered Brighton to immediately stop funding CTP loans because Brighton was overleveraged and its capital ratio had fallen below FDIC requirements.

25. In December 2018, Brighton entered into a consent order with the FDIC to resolve alleged violations of federal banking laws and regulations. The FDIC alleged that Brighton engaged in unsound banking practices; was operating with inadequate liquidity, deficient capital levels, inadequate earnings, and elevated sensitivity to market risk; and had ineffective board and management oversight and engaged in poor strategic planning.

26. On July 26, 2018—shortly after the FDIC ordered Brighton to immediately stop funding CTP loans—Brighton terminated the Correspondent Loan Purchase Agreement.

27. Brighton terminated the Correspondent Loan Purchase Agreement because it could not continue to fulfill its obligations under the Correspondent Loan Purchase Agreement without violating the FDIC's order. Brighton's termination letter did not raise any deception, fraud, concealment, or material misrepresentation by 1st Signature (and there was none).

28. At the time of termination, Brighton had already committed to 230 unfunded loans under the Loan Purchase Agreement. Termination did not affect Brighton's obligations for those loans. Brighton Bank was obligated to provide more than $40 million to fund those loans.

29. Brighton breached the agreement by failing to fund and purchase those loans.

30. 1st Signature had to locate alternate funding sources for those loans because of Brighton's breach. 1st Signature incurred substantial expense in doing so including additional fees, expenses, labor costs, and interest charges.

31. Brighton's breach also damaged 1st Signature's relationships with builders due to its inability to be able to fund current draws with those builders, resulting in lost business.

32. On August 2, 2018, the parties entered into an agreement styled "Addendum to Brighton Bank Purchase Agreement" (the "Addendum.") (Ex. B.)

33. The Addendum allowed the parties to place the already purchased loans with other lenders and relieved Brighton of its obligations to fund CTP loan draws that it had not already committed to fund. The Addendum also deferred fees and interests on those loans. If the Addendum had not been executed, borrowers who had already closed on loans with 1st Signature would not have been able to move forward with construction because their loans would not have been funded.

34. The Addendum was not actually an addendum.

35. It does not incorporate the terms of the original Loan Purchase Agreement.

36. The Addendum states that it is the "entire agreement" between the parties and "contain[s] the entire understanding and agreement between the parties with respect to all matters referred to herein and shall supersede all prior or contemporaneous agreements, representations, discussions[,] and understandings." (Ex. B ¶ 5.) Thus, the Addendum superseded and replaced the prior Correspondent Loan Purchase Agreement.

37. Brighton sought to enter into a second addendum, and proffered several drafts of a second addendum to 1st Signature. The parties did not enter into a second addendum.

**THE LINES OF CREDIT.**

38. 1st Signature also did other types of business with Brighton and it was approved for a $500,000 and a $200,000 line of credit from Brighton Bank.

39. The $200,000 line of credit was secured by five lots owned by 1st Signature and valued at $45,000 per lot.

40. In 2019, Brighton was audited by an independent public accounting firm, Elliot Davis, LLC. On December 31, 2019, Elliot Davis sent letters to 1st Signature stating that the audit revealed that the balances on the two lines of credit were the only obligations owed by 1st Signature to Brighton.

41. 1st Signature paid off the $500,000 line of credit, which was secured by stock in 1st Signature and personal guarantees, on May 29, 2020 via wire transfer in the amount of $500,420.05. This payoff amount was derived from the portal provided by Brighton to enable customers to render a per diem payoff from the automated website.

42. Brighton Bank received the specified wire with instructions of where to apply the monies but did not apply that money to the loan balance and instead misappropriated it for its own purposes.

43. 1st Signature paid off the $200,000 line of credit on April 22, 2020 in the same manner described above. Brighton Bank, however, did apply that money to the loan balance and legal counsel for Brighton Bank acknowledged that the loan

was paid in full. Thereafter, the loan was removed from the portal in the Brighton Bank website.

### THE SCHEME TO DEFRAUD.

44. On April 17, 2020, Glenn Everton, legal counsel to Brighton Bank sent a letter through U.S. Mail stating that 1st Signature Bank was in default on both lines of credit.

45. At that time the $500,000 line of credit was current and was not due to mature until June 8, 2020.

46. Everton also demanded that 1st Signature immediately buy back three loans that Brighton had purchased under the Correspondent Loan Purchase Agreement.

47. 1st Signature's obligation to purchase back loans was terminated by Brighton when Brighton terminated the Correspondent Loan Purchase Agreement. In addition, Brighton's right to require 1st Signature to purchase back loans terminated when Brighton failed to honor its obligation to fund the 230 loans it had already committed to purchase and fund.

48. The purpose of the letter was to coerce 1st Signature into paying amounts it did not owe.

49. On April 22, 2020, 1st Signature wired $39,080.79, the payoff amount pulled through the website portal provided by Brighton to its customers for such purposes, to Brighton to pay of the remaining balance on the $200,000 line of credit, secured by the five lots. Brighton did apply that money to the loan and the payoff was acknowledged by legal counsel as paid in full.

50. Despite knowing that 1st Signature had no obligation to buyback loans, Brighton sent another letter through U.S. Mail on May 5, 2020 demanding that 1st Signature buyback three loans.

51. Brighton also demanded that 1st Signature pay it almost a half million dollars in fees and interest for the CTP loans that Brighton committed to purchase and fund, but did not and could not fund.

52. In July 2020, 1st Signature closed the final lot that had previously been secured by the $200,000 line of credit.

53. John Phillips, Brighton Bank's CEO, used electronic mail to send a letter assuring the title company that the line of credit was still due a payoff amount of $38,739.05 from the closing. By closing that transaction, he falsely asserted that Brighton had a $38,739.05 payoff on the property to release the lien that was securing the $200,000 line of credit that had been paid in full months prior.

54. As a result, Brighton Bank was wired $38,739.05 from the closing of the real estate transaction. That money rightfully belonged to 1st Signature.

### COUNT 1—DECLARATORY JUDGMENT AS TO THE CORRESPONDENT LOAN PURCHASE AGREEMENT

55. Brighton terminated the Correspondent Loan Purchase Agreement.

56. Nonetheless Brighton is now demanding that 1st Signature perform obligations owed under the Correspondent Loan Purchase Agreement and the Addendum.

57. Thus an actual and justiciable controversy exists between 1st Signature and Brighton with respect to the interpretation and meaning of the terminated

Correspondent Loan Purchase Agreement and Addendum and the parties' respective rights, duties, and obligations under those agreements.

58. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, 1st Signature seeks a judicial declaration of the parties' respective rights, obligations, and duties under the terminated Correspondent Loan Purchase Agreement and Addendum, including a declaration that 1st Signature has no further obligations under those agreements.

### COUNT 2 DECLARATORY JUDGMENT AS TO THE $200,000 AND $500,000 LINES OF CREDIT

59. 1st Signature wired the full payoff amount for the $200,000 line of credit to Brighton on April 22, 2020, which was accepted and acknowledged as paid in full by Brighton's legal counsel.

60. Brighton has applied those funds ($39,080.79 received from the portal) to the loan balance, but took the additional $38,739.05 under false pretense as the full balance was already paid and acknowledged on April 22, 2020.

61. 1st Signature wired the full payoff amount for the $500,000 line of credit to Brighton on May 29, 2020.

62. Brighton applied the interest due on May 29 and then on June 17, 2020 acknowledged a $308,731 principal payment, but has not applied the balance of those funds to the loan balance, which would have paid off the loan in full.

63. Thus an actual and justiciable controversy exists between 1st Signature and Brighton with respect to the application of those funds to the balances due under the promissory notes.

64. Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, 1st

Signature seeks a judicial declaration of the parties' respective rights, obligations, and duties, including a declaration that the lines of credit were paid in full and extinguished on the payoff dates.

### COUNT 3—THEFT (IND. CODE § 35-43-4-2.5)

65. The Indiana Crime Victim Relief Act, Indiana Code § 34-24-3-1 permits a victim of theft under Indiana Code § 35-43-4-2.5 to bring a civil action and recover treble damages, costs, and attorney's fees.

66. Brighton caused $38,739.05 to be wired to Brighton out of a real estate closing.

67. Brighton had no right to those funds. They rightfully belong to 1st Signature.

68. By coercing the title company to wire those funds to Brighton, Brighton intentionally exerted unauthorized control over 1st Signature's money with the intent to deprive 1st Signature of the value of that money.

69. 1st Signature wired the full payoff amount for the $200,000 line of credit to Brighton on April 22, 2020.

70. Despite acknowledging the loan payoff, Brighton continued to try to collect additional payment on the $200,000 line of credit.

71. Thus, Brighton has used the loan payoff funds for its own unauthorized purposes.

72. Brighton has intentionally exerted unauthorized control over 1st Signature's payoff funds with the intent to deprive 1st Signature of those funds.

73. 1st Signature wired the full payoff amount for the $500,000 line of credit

to Brighton on May 29, 2020.

74. Brighton has intentionally not applied those funds to the loan balance.

75. Brighton has instead used those funds for its own unauthorized purposes

76. Brighton has intentionally exerted unauthorized control over 1st Signature's payoff funds with the intent to deprive 1st Signature of those funds.

77. 1st Signature has suffered a pecuniary loss as the result of Brighton's thefts.

### COUNT 4—CONVERSION (IND. CODE § 35-43-4-3)

78. The Indiana Crime Victim Relief Act, Indiana Code § 34-24-3-1 permits a victim of conversion under Indiana Code § 35-43-4-3 to bring a civil action and recover treble damages, costs, and attorney's fees.

79. 1st Signature wired the full payoff amount for the $200,000 line of credit to Brighton on April 22, 2020.

80. Even though Brighton's legal counsel acknowledged the payoff in writing, Brighton later demanded that 1st Signature pay an additional $38,739.05 under false pretenses set forth above.

81. Brighton has instead used those funds for its own unauthorized purposes.

82. Brighton has intentionally exerted unauthorized control over 1st Signature's funds.

83. 1st Signature wired the full payoff amount for the $500,000 line of credit to Brighton on May 29, 2020. Brighton applied $1700 towards the payoff on May 29 and later applied an additional $308,731 on June 17, 2020. Brighton, however, has failed to apply the balance towards the payoff.

84. Brighton has intentionally not applied those funds to the loan balance.

85. Brighton has instead used those funds for its own unauthorized purposes

86. Brighton has intentionally exerted unauthorized control over 1st Signature's payoff funds.

87. 1st Signature has suffered a pecuniary loss as a result of 1st Signature's conversion.

### COUNT 5—DECEPTION (IND. CODE § 35-43-5-3)

88. The Indiana Crime Victim Relief Act, Indiana Code § 34-24-3-1 permits a victim of deception under Indiana Code § 35-43-5-3 to bring a civil action and recover treble damages, costs, and attorney's fees.

89. Brighton Bank knowingly and intentionally made a false and misleading written statement to a title company that 1st Signature owed $38,739.05 on a loan and that Bright had a lien on 1st Signature's Indiana real property.

90. Bright made this false and misleading statement with the intent to obtain $38,739.05 of 1st Signature's money from the title company.

91. As a result, the title company wired $38,739.05 of 1st Signature's money to Brighton.

92. Brighton's deception caused 1st Signature to suffer a pecuniary loss.

### COUNT 6—CORRUPT BUSINESS INFLUENCE (IND. CODE § 35-45-6-2)

93. Indiana Code § 34-24-2-6 allows an aggrieved person, like 1stSignature, to bring a civil action for violations of Indiana Code § 35-45-6-2.

94. The statute allows 1st Signature to obtain an injunction, treble damages,

punitive damages, costs, and attorney's fees.

95. Brighton, Everton, and Phillips have joined together to form a criminal enterprise to engage in racketeering activity to deprive 1st Signature of its money and property through fraudulent means. Brighton individually is also an enterprise.

96. Brighton engaged in a pattern of racketeering activity by committing the three acts of theft in violation of Indiana Code § 35-43-4-2 described in Count 3.

97. Brighton knowingly and intentionally received proceeds from this pattern of racketeering activity including the two loan payoffs and $38,739.05 from the real estate closing.

98. Through the pattern of racketeering activity Brighton knowingly and intentionally acquired an interest in this same property.

99. 1st Signature is aggrieved by Brighton's violations of Indiana Code § 35-45-6-2.

## COUNT 7—RICO (18 U.S.C. § 1962)

100. Under 18 U.S.C. § 1964(c) any person injured by violations of 18 U.S.C. § 1962 may bring a civil action and recover treble damages, costs, and attorney's fees.

101. Brighton, Everton, and Phillips have joined together to form a criminal enterprise to engage in an interstate pattern of racketeering activity to deprive 1st Signature of money and property through fraudulent means.

102. Brighton, Everton, and Phillips intentionally devised a scheme to defraud 1st Signature by having 1st Signature wire loan payoffs to Brighton.

13

Brighton would then misappropriate the loan payoffs for its own purposes rather than apply the funds to the loan balances.

103. The next phase of that scheme involves continuing to treat the loan balances as owing and in default and attempting to collect them.

104. On April 17, 2020, Everton and Brighton mailed a letter from Tennessee to 1st Signature in Indiana falsely claiming that amounts were owed to buy-back loans under the terminated Correspondent Loan Purchase Agreement. This letter was intended to obtain money under the false pretense that an obligation was owed. The letter offered to roll those amounts into a new debt workout to cure a default under the $200,000 and $500,000 lines of credit. The second purpose of the letter was to coerce 1st Signature to wire funds to pay off the lines of credit so that Brighton could misappropriate those funds. Mailing this letter was mail fraud under 18 U.S.C. § 1341.

105. On April 22, 2020, Brighton committed wire fraud in violation of 18 U.S.C. § 1343 by inducing 1st Signature to wire $38,739.05 in funds from Indiana to Tennessee under false pretenses, knowing that Brighton would continue to collect on this debt after it was paid off by the wire.

106. On May 5, 2020, Everton and Brighton sent a second letter from Tennessee through the U.S. Mail to 1st Signature in Indiana. This letter again falsely asserted that amounts were owed to buy back loans under the terminated Correspondent Loan Purchase Agreement. This letter was intended to obtain money under the false pretense that an obligation was owed. That letter again offered to roll those amounts into a new debt workout with the amount owed on the

14

$500,000 line of credit. The second purpose of the letter was to coerce 1st Signature to wire funds to pay off the $500,000 line of credit so that Brighton could misappropriate those funds. Mailing this letter was mail fraud under 18 U.S.C. § 1341.

107. On May 29, 2020, Brighton committed wire fraud in violation of 18 U.S.C. § 1343 by inducing 1st Signature to wire funds from Indiana to Tennessee to pay off the $500,000 line of credit knowing that it would not apply the funds to the loan.

108. In June 2020, Brighton and Phillips deposited a letter in the electronic mail in Tennessee to a title company in Indiana falsely claiming that a balance on the $200,000 line of credit was still owed and secured by a lien on 1st Signature's Indiana real property.

109. That letter was intended to and did induce the title company to wire $38,739.05 of 1st Signature' money from Indiana to Brighton in Tennessee. E-Mailing the letter was wire fraud in violation of 18 U.S.C. § 1343.

110. By inducing the title company to wire $38,739.05 of 1st Signature' money to Brighton, Brighton and Phillips also committed wired fraud in violation of 18 U.S.C. § 1343.

111. These acts of wire fraud and mail fraud form a pattern of racketeering used to further the enterprise's nefarious scheme to steal from 1st Signature.

112. Brighton participated in the affairs of the enterprise by engaging in this pattern of racketeering activity.

113. 1st Signature was injured by Brighton's participation in the pattern of racketeering activity.

## CONCLUSION

1st Signature respectfully requests judgment in its favor against Brighton:

    A. Declaring that 1st Signature has no further obligations under the Correspondent Loan Purchase Agreement or the Addendum and that no amounts are owed under either agreement;

    B. Declaring that the $200,000 line of credit paid in full on April 22, 2020;

    C. Declaring the $500,000 line of credit paid in full on May 29, 2020;

    D. An injunction ordering Brighton to apply 1st Signature's loan payoffs to the $200,000 and $500,000 lines of credit;

    E. An injunction barring Brighton from asserting that any amounts are owed under the lines of credit or that Brighton has any liens or security interests in 1st Signature's property;

    F. Actual damages;

    G. Treble damages;

    H. Punitive damages;

    I. Prejudgment interest;

    J. Post judgment interest;

    K. Costs;

    L. Attorney's fees; and

    M. Any other appropriate relief.

Respectfully submitted,

*/s/Peter S. French*
Peter S. French, Atty. No. 16716-49
Jeffrey D. Stemerick, Atty. No. 29499-53
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
P:  317.713.3500
F:  317.713.3699
E: pfrench@taftlaw.com
   jstemerick@taftlaw.com

27682083.1