UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

1ST SIGNATURE LENDING, LLC,

    Plaintiff/Counter-Defendant,

v.                                                               No. 2:20-02894-JTF-cgc

BRIGHTON BANK,

    Defendant/Counter-Plaintiff.

## ANSWER AND COUNTERCLAIM

For its Answer to Plaintiff 1st Signature Lending, LLC's Complaint Defendant Brighton Bank states as follows:

For its answers to the individually numbered paragraphs of the Complaint, Defendant states as follows:

1.     The allegations in Paragraph 1 of the Complaint are denied.

2.     Defendant admits that Plaintiff and Defendant entered into a Correspondent Loan Purchase Agreement dated May 7, 2015 (the "Correspondent Agreement"), setting the terms by which Defendant could fund and purchase loans originated by Plaintiff. Defendant denies that the FDIC ordered it to discontinue funding loans and that it engaged in "unsound banking practices." Defendant admits that it terminated the Correspondent Agreement by letter dated July 26, 2018. Defendant is without knowledge or information to form a belief regarding the remaining allegations set forth in Paragraph 2 of the Complaint; therefore, these allegations are denied.

3.     Defendant admits that in 2020 it sought to enforce certain terms of the Correspondent Agreement and Plaintiff's obligations under the Correspondent Agreement that

survived after termination, which include repurchase of defaulted loans and payment of fees and interests on loan commitments confirmed prior to termination.

    4.    Defendant admits that Plaintiff had two lines of credit with Defendant— Loan No. 0178111250 in the principal amount of $200,000, with a maturity date of January 20, 2020, ("Lona No. 1250") and Loan No. 0178111251 in the principal amount of $500,000 with a maturity date of June 8, 2020 ("Loan No. 1251"). Defendant admits that Loan No. 1250 is closed. Defendant denies the remaining allegations in Paragraph 4 of the Complaint and demands strict proof thereof.

    5.    The allegations in Paragraph 5 of the Complaint are denied.

    6.    Defendant admits that Plaintiff attempts to state a basis for its claims and for this action but denies any liability. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint; the allegations are therefore denied.

    7.    Defendant admits the allegations in Paragraph 7 of the Complaint on information and belief.

    8.    Defendant admits the allegations in Paragraph 8 of the Complaint on information and belief.

    9.    Defendant admits the allegation in Paragraph 9 of the Complaint on information and belief.

    10.    Defendant admits the allegation in Paragraph 10 of the Complaint on information and belief.

    11.    Defendant admits the allegation in Paragraph 11 of the Complaint on information and belief.

12. Defendant admits the allegation in Paragraph 12 of the Complaint on information and belief.

13. Defendant admits the allegation in Paragraph 13 of the Complaint.

14. Defendant admits the allegation in Paragraph 14 of the Complaint.

15. Defendant admits the allegation in Paragraph 15 of the Complaint.

16. The allegation in Paragraph 16 of the Complaint is denied.

17. The allegation in Paragraph 17 of the Complaint is denied.

18. The allegation in Paragraph 18 of the Complaint is denied.

19. Defendant admits that Plaintiff attempts to state a basis for its claims and for this action but denies any liability thereon. Defendant denies that Plaintiff states any cause of action against it under any federal statute.

20. Defendant admits the allegation in Paragraph 20 of the Complaint.

21. The Agreement referenced in Paragraph 21 of the Complaint is a document that speaks for itself.  All allegations contained in Paragraph 21 that contradict the terms of the Agreement are hereby denied.  Defendant does not deny that the general description of "CPT Loans" contained in Paragraph 21 is accurate. Defendant denies any remaining allegations in Paragraph 21 of the Complaint and demands strict proof thereof.

22. The Agreement referenced in Paragraph 22 of the Complaint is a document that speaks for itself.  All allegations contained in Paragraph 22 that contradict the terms of the Agreement are hereby denied.  Defendant does not deny that under the Correspondent Agreement that it could purchase and fund loans originated by Plaintiff, and that Plaintiff could sell loans in the secondary market. Defendant denies any remaining allegations in Paragraph 22 of the Complaint and demands strict proof thereof.

23. The Agreement referenced in Paragraph 23 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 23 that contradict the terms of the Agreement are hereby denied. Defendant denies any remaining allegations in Paragraph 23 of the Complaint and demands strict proof thereof.

24. The allegations in Paragraph 44 of the Complaint are denied.

25. Defendant admits that on December 21, 2018, it entered into a consent order with the FDIC without admitting or denying any charges or allegations raised by the FDIC. The consent order referenced in Paragraph 25 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 25 that contradict the terms of the letter are hereby denied. Defendant denies any remaining allegations in Paragraph 25 of the Complaint and demands strict proof thereof.

26. Defendant admits that it terminated the Correspondent Agreement by letter dated July 26, 2018. Defendant denies any remaining allegations in Paragraph 26 of the Complaint and demands strict proof thereof.

27. The allegation set forth in the first sentence of Paragraph 27 of the Complaint is denied. The letter referenced in Paragraph 27 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 27 that contradict the terms of the letter are hereby denied. Defendant denies any remaining allegations in Paragraph 27 of the Complaint and demands strict proof thereof.

28. The allegations in Paragraph 28 of the Complaint are denied.

29. The allegations in Paragraph 29 of the Complaint are denied.

30. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint; the allegations are therefore denied.

31. Defendant denies that it breached the Correspondent Agreement. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 31 of the Complaint; the allegations are therefore denied.

32. The Addendum referenced in Paragraph 32 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 32 that contradict the terms of the Addendum are hereby denied.

33. The Addendum referenced in Paragraph 33 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 33 that contradict the terms of the Addendum are hereby denied. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 33 of the Complaint; the allegations are therefore denied.

34. The allegation in Paragraph 34 of the Complaint is denied.

35. The allegation in Paragraph 35 of the Complaint is denied.

36. The Addendum referenced in Paragraph 36 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 36 that contradict the terms of the Addendum are hereby denied. The allegation in the final sentence of Paragraph 35 of the Complaint is denied.

37. The allegations in Paragraph 37 of the Complaint are denied.

38. Defendant admits that Plaintiff had two lines of credit with Defendant— Loan No. 1250 in the principal amount of $200,000, with a maturity date of January 20, 2020 and Loan No. 1251 in the principal amount of $500,000, with a maturity date of June 8, 2020.

39. Defendant admits that Plaintiff pledged five real property lots as security for Loan No. 1250. For further answer, Defendant states that pursuant to Plaintiff's agreements with Defendant, Plaintiff's obligations and liabilities to Defendant were fully cross-collateralized and subject to setoff.

40. Defendant admits on information and belief that Elliot Davis, LLC sent randomized confirmation letters to a subset of Defendants' clients in 2019. The letter referenced in Paragraph 40 of the Complaint is a document that speaks for itself.  All allegations contained in Paragraph 40 that contradict the terms of the letter are hereby denied.

41. Defendant admits that Plaintiff wired $500,420.05 to it on May 29, 2020, and that it has a "portal" by which its customers may access account and loan information. Defendant denies that the amount satisfied and cured existing defaults of Loan No. 1251, secured by "100% member interest in 1st Signature Lending, LLC" and personal guarantees of its member representatives. Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 41 of the Complaint; the allegations are therefore denied.

42. The allegations in Paragraph 42 of the Complaint are denied.

43. Defendant admits that Plaintiff wired $39,080.79 on April 22, 2020, that was applied to Loan No. 1250. Defendant also admits that in a letter dated May 5, 2020, Defendant acknowledged that Loan No. 1250 was "paid in full." Defendant is without sufficient knowledge

or information to form a belief as to the truth of the remaining allegations contained in Paragraph 43 of the Complaint; the allegations are therefore denied.

44. The letter referenced in Paragraph 44 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 44 that contradict the terms of the letter are hereby denied.

45. Defendant admits that the maturity date of Loan No. 1251 was June 8, 2020. The remaining allegation in Paragraph 45 of the Complaint is denied.

46. The letter referenced in Paragraph 46 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 46 that contradict the terms of the letter are hereby denied.

47. The allegations in Paragraph 47 of the Complaint are denied.

48. The allegations in Paragraph 48 of the Complaint are denied.

49. Defendant admits that Plaintiff wired $39,080.79 on April 22, 2020, that was applied to Loan No. 1250. Defendant also admits that in a letter dated May 5, 2020, Defendant acknowledged that Loan No. 1250 was "paid in full." Defendant is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 49 of the Complaint; the allegations are therefore denied.

50. Defendant admits that it sent Plaintiff a letter on May 5, 2020, regarding, *inter alia*, repurchase of defaulted loans. The letter referenced in Paragraph 50 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 50 that contradict the terms of the letter are hereby denied. The remaining allegations in Paragraph 50 of the Complaint are denied.

51. The letter referenced in Paragraph 51 of the Complaint is a document that speaks for itself. All allegations contained in Paragraph 51 that contradict the terms of the letter are hereby denied. Any remaining allegations in Paragraph 51 of the Complaint are denied.

52. Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegation contained in Paragraph 52 of the Complaint; the allegation is therefore denied.

53. The allegations in Paragraph 53 of the Complaint are denied.

54. Defendant admits that it received a check dated July 10, 2020, for $38,739.05 from a Indiana title company. The remaining allegations in Paragraph 54 of the Complaint are denied.

55. Defendant admits the allegation in Paragraph 55 of the Complaint.

56. Defendant admits that Plaintiff has obligations owned to Defendant that survived the termination of the Agreement.

57. The allegations in Paragraph 57 of the Complaint are denied.

58. The allegations in Paragraph 58 of the Complaint are not factual statements to which an answer or response is required. To the extent an answer is required, the allegations in Paragraph 58 are denied.

59. Defendant admits that Plaintiff wired $39,080.79 on April 22, 2020, that was applied to Loan No. 1250. Defendant also admits that in a letter dated May 5, 2020, Defendant acknowledged that Loan No. 1250 was "paid in full."

60. Defendant admits that Plaintiff wired $39,080.79 on April 22, 2020, that was applied to Loan No. 1250. Defendant admits that it received a check dated July 10, 2020, for $38,739.05 from an Indiana title company. The remaining allegations in Paragraph 60 of the Complaint are denied.

61. Defendant admits that Plaintiff wired $500,420.05 to it on May 29, 2020. Defendant denies that the amount satisfied and cured existing defaults of Loan No. 1251.

62. Defendant admits that it applied $308,731.41 as a principal payment to Loan No. 1251, The remaining allegations in Paragraph 62 of the Complaint are denied.

63. The allegations in Paragraph 63 of the Complaint are not factual statements to which an answer or response is required. To the extent an answer is required, the allegations in Paragraph 63 are denied.

64. The allegations in Paragraph 64 of the Complaint are not factual statements to which an answer or response is required. To the extent an answer is required, the allegations in Paragraph 64 are denied.

65. IC §§ 34-24-3-1 and 35-43-4-2.5 referenced in Paragraph 65 of the Complaint speak for themselves. All allegations contained in Paragraph 65 that contradict said statutes are hereby denied. Defendant denies that it is subject to or violated any Indiana criminal statute. Any remaining allegations in Paragraph 65 of the Complaint are denied.

66. The allegations in Paragraph 66 of the Complaint are denied.

67. The allegations in Paragraph 67 of the Complaint are denied.

68. The allegations in Paragraph 68 of the Complaint are denied.

69. The allegations in Paragraph 69 of the Complaint are denied.

70. The allegations in Paragraph 70 of the Complaint are denied.

71. The allegations in Paragraph 71 of the Complaint are denied.

72. The allegations in Paragraph 72 of the Complaint are denied.

73. The allegations in Paragraph 73 of the Complaint are denied.

74. The allegations in Paragraph 74 of the Complaint are denied.

75. The allegations in Paragraph 75 of the Complaint are denied.

76. The allegations in Paragraph 76 of the Complaint are denied.

77. The allegations in Paragraph 77 of the Complaint are denied.

78. IC §§ 34-24-3-1 and 35-43-4-3 referenced in Paragraph 78 of the Complaint speak for themselves. All allegations contained in Paragraph 78 that contradict said statutes are hereby denied. Defendant denies that it is subject to or violated any Indiana criminal statute. Any remaining allegations in Paragraph 78 of the Complaint are denied.

79. The allegations in Paragraph 79 of the Complaint are denied.

80. The allegations in Paragraph 80 of the Complaint are denied.

81. The allegations in Paragraph 81 of the Complaint are denied.

82. The allegations in Paragraph 82 of the Complaint are denied.

83. Defendant admits that on May 29, 2020, it applied $1,721.54 to Loan No. 1251 and on June 17, 2020, it applied $308,738.41 to Loan No. 1251. The remaining allegations in Paragraph 83 of the Complaint are denied.

84. The allegations in Paragraph 84 of the Complaint are denied.

85. The allegations in Paragraph 85 of the Complaint are denied.

86. The allegations in Paragraph 86 of the Complaint are denied.

87. The allegations in Paragraph 87 of the Complaint are denied.

88. IC §§ 34-24-3-1 and 35-43-5-3 referenced in Paragraph 88 of the Complaint speak for themselves. All allegations contained in Paragraph 88 that contradict said statutes are hereby denied. Defendant denies that it is subject to or violated any Indiana criminal statute. Any remaining allegations in Paragraph 88 of the Complaint are denied.

89. The allegations in Paragraph 89 of the Complaint are denied.

90. The allegations in Paragraph 90 of the Complaint are denied.

91. The allegations in Paragraph 91 of the Complaint are denied.

92. The allegations in Paragraph 92 of the Complaint are denied.

93. IC §§ 34-24-2-6 and 35-45-6-2 referenced in Paragraph 93 of the Complaint speak for themselves. All allegations contained in Paragraph 93 that contradict said statutes are hereby denied. Defendant denies that it is subject to or violated any Indiana criminal statute. Any remaining allegations in Paragraph 93 of the Complaint are denied.

94. The allegations in Paragraph 94 of the Complaint are denied.

95. The allegations in Paragraph 95 of the Complaint are denied.

96. The allegations in Paragraph 96 of the Complaint are denied.

97. The allegations in Paragraph 97 of the Complaint are denied.

98. The allegations in Paragraph 98 of the Complaint are denied.

99. The allegations in Paragraph 99 of the Complaint are denied.

100. 18 USC §1964(c) and §1962 referenced in Paragraph 100 of the Complaint speak for themselves. All allegations contained in Paragraph 100 that contradict said statutes are hereby denied. Defendant denies that it violated any federal law. Any remaining allegations in Paragraph 100 of the Complaint are denied.

101. The allegations in Paragraph 101 of the Complaint are denied.

102. The allegations in Paragraph 102 of the Complaint are denied.

103. The allegations in Paragraph 103 of the Complaint are denied.

104. The allegations in Paragraph 104 of the Complaint are denied.

105. The allegations in Paragraph 105 of the Complaint are denied.

106. The allegations in Paragraph 106 of the Complaint are denied.

107. The allegations in Paragraph 107 of the Complaint are denied.

108. The allegations in Paragraph 108 of the Complaint are denied.

109. The allegations in Paragraph 109 of the Complaint are denied.

110. The allegations in Paragraph 110 of the Complaint are denied.

111. The allegations in Paragraph 111 of the Complaint are denied.

112. The allegations in Paragraph 112 of the Complaint are denied.

113. The allegations in Paragraph 113 of the Complaint are denied.

Defendant denies that Plaintiff is entitled to any relief and specifically denies that Plaintiff is entitled to any relief sought in Paragraphs A-M as set forth in the "Conclusion" to the Complaint (ECF No. 1 PageID 16).

All allegations of the Complaint which have not been specifically admitted or denied above are hereby denied.

Defendant relies on the following Affirmative Defenses:

1. The Complaint fails to state a claim for which relief can be granted.

2. Counts 3–6 are barred as a matter of law.

3. Plaintiff failed to plead its claim for alleged fraud/deception with the required particularity.

4. Defendant relies on the doctrine of comparative fault.

5. Plaintiff has not suffered any damages as a matter of law.

6. Plaintiff did not incur any damage as the result of any act or omission of Defendant and Defendant is not the proximate cause of any of Plaintiff's alleged damages.

7. Defendant is not guilty of any of the alleged wrongful conduct.

8. The Complaint is barred by the applicable statutes of limitation and/or the doctrine of laches.

9. The doctrines of waiver and estoppel are bars to the alleged claims.

10. Plaintiff has "unclean hands" and are therefore not entitled to any equitable remedy.

11. Plaintiff failed to mitigate its damages as required under the law.

12. Defendant is entitled to setoff/recoupment of amounts owed to it under the Agreement and Addendum and arising from Plaintiff's breach of the Agreement and Addendum and the terms of Loan Nos. 1250 and/or 1251.

13. While denying that Plaintiff states a claim upon which punitive or treble damages would be recoverable as a matter of law, Defendant nevertheless at all times exercised good faith efforts to comply with the applicable law and that any conduct alleged to be violative of the law would be contrary to Defendant's efforts and cannot serve to impose punitive or treble damages against them. Further, pursuant to the United States Constitution and Tennessee law, if a claim for punitive damages were allowed to proceed, Defendant would be entitled to, and would hereby demand, a bifurcated hearing whereby the issue of punitive damages is separately considered only after a finding of liability and with due safeguards, review, and specific fact-finding by the court.

14. In the event that Defendant subsequently discovers any new or additional evidence which would bar Plaintiff's recovery on the Complaint, Defendant reserves the right to assert such after-acquired evidence.

15. Defendant reserves the right to supplement its Answer and to assert any defense and affirmative defense which it may become aware of through discovery.

WHEREFORE, having fully answered the Plaintiff's Complaint, Defendants pray for a dismissal at Plaintiffs' cost and for such other and further relief to which it may be entitled

## COUNTERCLAIM

Having fully answered the Complaint, Defendant/Counter-Plaintiff Brighton Bank (the "Bank"), hereby asserts the following counterclaim against Plaintiff/Counter-Defendant 1st Signature Lending, LLC ("1st Signature"):

## PARTIES AND JURISDICTION

1. Counter-Plaintiff Brighton Bank is a Tennessee banking corporation.

2. Counter-Defendant 1st Signature is an Indiana limited liability company with three members: Cornerstone Financial Services, LLC; Advance Capital, LLC; and M&M Capital, LLC (together the "1st Signature Members").

3. The Court has jurisdiction pursuant to 28 USC § 1332.

4. The United States District Court for the Southern District of Indiana determined by order dated December 11, 2020 (Case 1:20-2130 ECF No. 18) that venue is proper in this Court.

## FACTS

5. On May 7, 2015, Brighton Bank and 1st Signature entered into the "Brighton Bank Correspondent Loan Purchase Agreement" (the "Correspondent Agreement"), attached to the Complaint (ECF No. 1-1), and incorporated herein by reference, pursuant to which 1st Signature would sell and the Bank would buy certain mortgage loans.

6. By letter dated July 26, 2018, the Bank terminated the Correspondent Agreement.

7. Section 18.1 of the Correspondent Agreement states, among other things, that termination did not affect the parties' obligations with respect to loans already purchased.

8. On August 2, 2018, the parties entered into an "Addendum to Brighton Bank Correspondent Loan Purchase Agreement" (the "Addendum"), attached to the Complaint (ECF No. 1-2) and incorporated herein by reference, under which, *inter alia*, the Bank was not obligated

to fund loan draws and which set forth the terms under which Bank would defer collection of interest and fees due to it until such time as 1st Signature sold the loan in the secondary market.

9. In addition to the Correspondent Agreement, the Bank and 1st Signature entered into Loan Nos. 1250 and 1251 referenced herein above.

10. In connection with Loan No. 1251, 1st Signature executed a Promissory Note in favor of the Bank dated June 8, 2017 (the "Note"). The Note is attached hereto as Exhibit A and incorporated by reference.

11. In connection with the Note, 1st Signature and the 1st Signature Members executed a Commercial Pledge Agreement (the "Pledge Agreement"), granting the Bank a security interest in the "100%" of the Members' interest in 1st Signature (the "Collateral"). In addition to the Note, the Pledge Agreement secured all obligations and debts of 1st Signature to the Bank and all claims by the Bank against 1st Signature, then existing or thereafter arising, related or unrelated to the Note. The Pledge Agreement is attached hereto as Exhibit B and incorporated by reference.

12. Each of the Individual Defendants guaranteed the Note by a Commercial Guaranty executed contemporaneously with the Note. The Guaranties were "continuing" in that each Guarantor guaranteed full payment of any and all indebtedness owed by 1st Signature. The Commercial Guaranties attached hereto as collective Exhibit C and incorporated by reference.

13. 1st Signature made payments toward interest and fees due and owing under the Correspondent Agreement until February 2020.

14. By letter dated April 17, 2020, the Bank notified 1st Signature of events of default under the Correspondent Agreement and Note.

15. In response, 1st Signature satisfied Loan No. 1250, but did not cure other existing events of default. A follow-up letter was sent May 5, 2020, which included a proposed "Cross-

Collateral, Modification, and Extension Agreement" to resolve balances due over a five year term (the "May 5 Letter"). The May 5 Letter is attached hereto as Exhibit D and incorporated by reference.

16. On May 29, 2020, 1st Signature wired $500,420.05 to the Bank (the "Wire"), demanding that the funds be applied to Loan No. 1251.

17. By letter dated June 1, 2020, the Bank acknowledged receipt of the Wire, reiterated that the Correspondent Agreement and Note remained in default status, detailed the total amount of then existing default items of $1,200,666.67, and again suggest a work-out solution (the "June 1 Letter"). The June 1 Letter is attached hereto as Exhibit E and incorporated by reference.

18. The breakdown of the items of default existing as of June 1, 2020, follows:

   a. Back loan buyback (principal only; no interest or fees added) $48,622.97

   b. Sidwell loan buyback (principal only; no interest or fees added) $48,426.26

   c. James loan buyback (principal only; no interest or fees added) $97,594.73

   d. Tharp loan buyback (remaining principal from partial payoff) $9,316.14

   e. Outstanding fees and interest owed on 182 loans bought back $498,008.06

   f. Current balance on Loan No. 1251 $498,698.51.

19. The proceeds of the Wire were applied as follows:

   a. Tharp remaining principal $9,316.14

   b. Back, Sidwell, James principal buyback $180,643.96

   c. Loan No. 1251 interest $1,721.54

   d. Loan No. principal $308,138,41.

20. In July 2020, the Bank received a check dated July 10, 2020, for $38,739.05 from an Indiana title company representing proceeds from the sale of real property securing 1st

Signature's obligations to the Bank. The Bank applied $38,739.05 to the $498,008.06 due under the Correspondent Agreement.

21. After applying all credits, amounts due to the Bank under the Correspondent Agreement and Note remain due and owing. Interest accrues pursuant to the Correspondent Agreement, Addendum, and Note.

22. Pursuant to the Guaranties executed by the Guarantors, Guarantors agreed to secure the payment to the Bank of 1st Signature's debt obligation to the Bank, or any portion thereof.

23. Pursuant to the Correspondent Agreement, Note, and Guaranties, 1st Signature and the Guarantors agreed to pay the Bank its cost to enforce the terms of the Agreement and Note, including, but not limited to, its reasonable attorney fees.

<u>COUNT I–BREACH OF CONTRACT</u>

<u>The Correspondent Agreement</u>

24. Brighton Bank incorporates by reference the averments set for the in Paragraphs 1–24 above.

25. The Bank and 1st Signature entered into the Correspondent Agreement and related Addendum.

26. The Correspondent Agreement and Addendum are valid and enforceable contracts.

27. 1st Signature breached the Correspondent Agreement, by among other things, failing to pay amounts due arising under the terms of the Correspondent Agreement that survived termination.

28. The Bank was damaged by 1st Signature's breach in an amount to be determined, plus interest costs and fees.

### The Note

29. 1st Signature executed the Note in favor of the Bank.

30. The Note is valid and enforceable.

31. 1st Signature breached the Note by failing to pay the amounts due after default and demand.

32. The Bank is entitled to the balance after applying all credits, plus interest, costs, and fees.

Now having fully plead its Counterclaim, Bank of Brighton seeks the following relief:

a. A declaration that 1st Signature breached the Correspondent Loan Agreement and/or Addendum and a judgment for the amounts due thereunder;

b. A declaration that the Bank properly exercised is rights in applying the Wire first to previously existing defaults, then to interest, and then to principal reduction;

c. A judgment against 1st Signature for amounts due and owing under the Note;

d. Prejudgment interest, post judgment interest, costs, and attorney fees; and

e. Any other just and equitable relief to which it is entitled.

Respectfully submitted,

HARRIS SHELTON HANOVER WALSH, PLLC

BY: _____s/ Amber G. Shaw_____
AMBER GRIFFIN SHAW (TN# 026337)
Suite 202, Hotel Lindo Bldg.
114 West Liberty Avenue
Covington, TN 38019-0846
(901) 476-7100
ashaw@harrisshelton.com

                        s/ Laura S. Martin
Laura S. Martin (TN# 26457)
6060 Primacy Parkway, Suite 100
Memphis, TN 38119
(901) 525-1455
lmartin@harrisshelton.com

*Attorneys for Defendant/Counter-Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of Court using the ECF system which sent notification of such filing to all registered attorneys.

                        s/ Laura S. Martin
Laura S. Martin